UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROQUAN HARRIS,

                          Plaintiff,

        -v-

CITY OF NEWBURGH, CITY OF
NEWBURGH P.O. KEVIN LAHAR; P.O.
CHARLES CRUZ; P.O. ROMAN
SCUADRONI; P.O. RICARDO RIVERA;
P.O. ROBERT PEDRICK; and P.O. "JOHN
or JANE DOES # 1-10," individual
defendants sued in their individual and
official capacities,

                          Defendants.

No. 16-CV-2731 (KMK)

OPINION & ORDER

Appearances:

Martin E. Adams, Esq.
Adams & Commissiong LLP
New York, NY
*Counsel for Plaintiff*

David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Roquan Harris ("Plaintiff") brings this Action against the City of Newburgh (the

"City"), Police Officer ("P.O.") Kevin Lahar ("Lahar"), P.O. Charles Cruz ("Cruz"), P.O.

Roman Scuadroni ("Scuadroni"), P.O. Ricardo Rivera ("Rivera"), P.O. Robert Pedrick

("Pedrick"), and P.O. "John or Janes Does # 1-10" (collectively, "Defendants") alleging

violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.  (*See* First Am. Compl.

("FAC") ¶ 1 (Dkt. No. 16).)  Plaintiff alleges that Defendants violated his constitutional rights by "subject[ing] [P]laintiff to, among other things, unreasonable force, and failure to intervene." (*Id.*)  Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Dkt. No. 26.)[1]  For the reasons to follow, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's First Amended Complaint ("FAC") and are assumed true for the purpose of resolving the instant Motion.

On or about April 17, 2013 at approximately 2:50 A.M., Plaintiff was at Johnes Street in Newburgh, New York when Defendants Scuadroni, Rivera, and Pedrick "entered the apartment and found [Plaintiff] in the closet."  (FAC ¶¶ 8–9.)[2]  The three officers "grabbed [P]laintiff" and

---

[1] In their Motion, Defendants seek to dismiss the claims against the individual Defendants on the basis that the Court lacks jurisdiction over these Defendants because "Plaintiff has failed to properly serve the[m] . . . with the summons and [C]omplaint."  (*See* Defs.' Mem. of Law in Supp. of Dismissal ("Defs.' Mem.") 18 (Dkt. No. 29).)  Defendants allege deficiencies with service attempted on June 24, 2016 regarding "[d]elivery of the summons and [C]omplaint to Christopher Lahar at the Newburgh Police Department, without a subsequent mailing."  (*Id.* at 20.)

In his opposition to Defendants' Motion, Plaintiff asserts that pursuant to a scheduling order dated December 15, 2016, (*see* Order (Dkt. No. 23) ("Plaintiff shall serve Defendants with the First Amended Complaint within 30 days of the date of this Order.")), "[o]n January 7, 2017, the individual [D]efendants were served, by delivering a copy of the sum[]mons to [D]efendants['] place of business, and by mailing a copy of the same, pursuant to the New York State Civil Practice Law[] and Rules," (*see* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss 1 (Dkt. No. 33)).  Plaintiff contends that Defendants' argument as to lack of personal jurisdiction "is moot."  (*Id.*)  In their reply papers, Defendants do not address this point.  (*See generally* Defs.' Reply Mem. of Law in Supp. of Dismissal (Dkt. No. 34).)  In light of Plaintiff's representations and Defendants' lack of response on this point, the Court assumes that Defendants do not contest the sufficiency of service of the FAC.

[2] While the FAC indicates that Plaintiff was "in the vicinity of Johnes Street" at the time the alleged violations occurred, the pleading does not provide an address of the referenced apartment.  (FAC ¶ 7.)

"[o]ne of the[m] . . . utilized an electronic control device or 'Ta[s]er' on [him]." (*Id.* ¶¶ 10–11.) Plaintiff did not resist arrest. (*See id.* ¶ 12.) While Defendants Scuadroni, Rivera, and Pedrick handcuffed Plaintiff, one of the defendant officers "stood on [P]laintiff's legs." (*Id.* ¶¶ 13–14.) All three officers "kicked, hit, punched, and otherwise beat [P]laintiff" and one of the officers again used the Taser on Plaintiff. (*Id.* ¶¶ 15–16.) When "Plaintiff pleaded for his life, . . . one of the defendant officers threated to shock him again with the Ta[s]er." (*Id.* ¶ 17.) As these Defendants were escorting Plaintiff to the police vehicle, they "threatened to throw [P]laintiff down the stairs." (*Id.* ¶ 18.)

Plaintiff asserts that the "use of force upon [him] was objectively excessive and unreasonable" and Defendants "did not have an objective and/or reasonable basis to use any degree of force against [P]laintiff, since [P]laintiff was unarmed, compliant, and did not resist arrest." (*Id.* ¶¶ 37–38.) Plaintiff asserts that "the defendant police officers who did not touch [P]laintiff did nothing to stop these illegal acts," (*id.* ¶ 19), but "had reasonable opportunity to prevent the violations of [P]laintiff's constitutional rights," (*id.* ¶ 42). Plaintiff further avers that "[p]ursuant to a conspiracy[] to cover up their misconduct," Defendants "agreed to act in concert . . . to inflict unconstitutional injuries" and "intentionally, knowingly and purposefully provided false statements and prepared false reports stating that [P]laintiff resisted arrest." (*Id.* ¶¶ 19, 45– 46.)

Plaintiff contends that the City "is aware . . . that many of the [Newburgh Police Department's] officers are insufficiently trained on the proper way to execute warrants, search for contraband, investigate incidents, determine if probable cause exists, [and] use force" and that "such improper training has often resulted in a deprivation of civil rights." (*Id.* ¶¶ 23–24.)[3]

---

[3] In paragraph 51 of the FAC, Plaintiff lists "examples of the claims [of police

Plaintiff alleges that "[d]espite such notice," the City has "failed to take corrective action," "failed to adequately train and supervise" its officers, or "recklessly trained the[m]." (*Id.* ¶¶ 24–26.)

"As a direct and proximate result of [D]efendants' actions[,] [P]laintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss." (*Id.* ¶ 34.) As a result of the alleged violations, Plaintiff seeks compensatory damages, punitive damages, costs and legal fees, as well as injunctive and declaratory relief. (*See id.* at 21.)

### B.  Procedural History

Plaintiff filed his initial Complaint in this Action on April 12, 2016, (*see* Dkt. No. 1), and filed the FAC on September 28, 2016, (*see* Dkt. No. 16). Defendants filed the instant Motion and accompanying papers on January 12, 2017. (*See* Dkt. Nos. 26–29.) Plaintiff filed his opposition on February 18, 2017, (*see* Dkt. No. 33), and Defendants filed their reply on January 28, 2017, (*see* Dkt. No. 34).

## II.  Discussion

### A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alterations, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil

---

misconduct] reported to the City of Newburgh" during the approximately eight years preceding the alleged violations at issue in this Action. (FAC ¶ 51.)

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . . " (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as

true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

B.  Analysis

In his opposition to Defendants' Motion, Plaintiff notes that he "does not disagree with" certain arguments raised by Defendants.  (*See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") 1 (Dkt. No. 33).)  Plaintiff concedes that "[t]he FAC does not make a claim for violation of [P]laintiff's Fifth[] and Sixth [A]mendment rights, nor does the FAC[] make any claim of commission of New York State [c]ommon [l]aw [t]orts."  (*Id.*)  The Court thus turns to Plaintiff's claims pursuant to *Monell*, and his failure to intervene and conspiracy claims.[4]

1.  *Monell* Liability

Defendants argue that any claims against the City of Newburgh should be dismissed because Plaintiff has failed to satisfy the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  (*See* Defs.' Mem. of Law in Supp. of Dismissal ("Defs.' Mem.") 10–17 (Dkt. No. 29).)

a.  Standard of Review

A municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691 (italics omitted); *see also Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat

---

[4] Defendants do not move to dismiss Plaintiff's excessive force claims.  (*See* Defs.' Mem. 17 ("All claims other than excessive force should be dismissed.").)

superior basis for the tort of its employee" (italics omitted)).  Rather, to prevail on a § 1983 claim against a municipal employer, Plaintiff must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691; *see also Hunter v. City of New York*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (internal quotation marks omitted)); *Johnson v. City of*

*New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

Here, Plaintiff alleges the following against the City:

> The City of Newburgh through a policy, practice and custom, directly caused the constitutional violations suffered by [P]laintiff. . . . The City of Newburgh was aware that the individual defendant officers were unfit officers who had previously committed the acts alleged [in the FAC] and[/]or have a propensity for unconstitutional conduct.

(FAC ¶¶ 48–50, 52.) Plaintiff further asserts that

> [t]he City . . . exercised deliberate indifference by . . . failing to take remedial action[,] . . . fail[ing] to properly train, retrain, supervise, discipline, and monitor the officers and improperly retain[ing] and utiliz[ing] them[,] . . . fail[ing] to adequately investigate prior complaints filed against the individual [D]efendants[,] . . . fail[ing] and refus[ing] to punish or attempt to punish police officers who have engaged in conduct abusive of citizens' rights[,] and . . . fail[ing] to provide proper re-training to its police officers.

(*Id.* ¶¶ 52–56.) Plaintiff avers that such "failure[s] proximately cause[] . . . the perpetuation of acts of police abuse against citizens" and "the violation of [P]laintiff's rights." (*Id.* ¶ 56.) In addition, Plaintiff alleges that "[t]here have been numerous instance[s] of police misconduct reported to the City . . . during the approximately eight years preceding th[e] [alleged violations]." (*Id.* ¶¶ 50–51; *see also id.* ¶ 23 ("The[se] . . . events are not an isolated incident. Defendant City of Newburgh is aware (from lawsuits, notices of claim, internal reviews, and complaints) that many of the [Newburgh Police Department's] officers are insufficiently trained . . . .").)

### b. Policy or Custom

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652,

at *18 (internal quotation marks omitted); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). There are at least two circumstances that courts have expressly identified as constituting a municipal policy: "where there is an officially promulgated policy as that term is generally understood," and "where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken." *Newton v. City of New York,* 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but nonetheless "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at *16 ("To prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom at issue is permanent and well-settled."). Under this theory, a plaintiff must allege "that the relevant practice is so widespread to have the force of law," *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)), which is to say, that it is a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "Widespread means that [the unconstitutional acts in question] are common or prevalent throughout the [municipality]; well-settled means that the

[unconstitutional acts in question] have achieved permanent, or close to permanent, status." *Davis v. City of New York*, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002).

"The Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of alleged [constitutional violations] is not probative of the existence of an underlying policy by a municipality." *Ameduri v. Village of Frankfort*, 10 F. Supp. 3d 320, 341 (N.D.N.Y. 2014) (collecting cases in the excessive force context); *see also Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22–23 (2d Cir. 2012) ("[The plaintiff's] citation to various lawsuits involving inmate claims for the excessive use of force is not probative of the existence of an underlying policy that could be relevant here."); *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (finding the plaintiff's reference to a "litany of other police-misconduct cases" to be insufficient to plausibly allege *Monell* liability because they involved different issues "or something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct"). "[T]he existence of other lawsuits against the City alleging similar violations of constitutional rights also does not establish a policy or custom as necessary under *Monell*." *Jones v. City of New York*, No. 12-CV-3658, 2013 WL 6047567, at *13 (E.D.N.Y. Nov. 14, 2013), *vacated and remanded*, 603 F. App'x 13 (2d Cir. 2015).

"Some courts, however, have found that other lawsuits identified by a plaintiff that concern the same practice and policy at issue in the complaint permit a plausible inference of deliberate indifference." *Kucharczyk*, 95 F. Supp. 3d at 543; *see also Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986) ("Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force."); *Osterhoudt v. City of New York*, No. 10-CV-3173,

2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) (noting that "[w]hile [the] plaintiff's citations to pending lawsuits and settlement agreements will not suffice to overcome summary judgment . . . they do permit a plausible inference of deliberate indifference" (internal quotation marks omitted)).

Here, paragraph 51 of the FAC details numerous lawsuits alleging police misconduct. (*See* FAC ¶¶ 51(a)-(u).) As Defendants note, only five of these suits were filed in the five years prior to Plaintiff's filing of this Action, (*see id.* ¶¶ 51(q)-(u)), and in 2012, the City made nearly 2,500 arrests per year, (*see* Defs.' Mem. 16 (citing *Tieman*, 2015 WL 1379652, at *17).) *See Reape v. City of New York*, No. 09-CV-1363, 2010 WL 4789285, at *4 (E.D.N.Y. Nov. 17, 2010) (finding that 17 police misconduct cases from 2006 to 2007 "[was] rather small considering the hundreds of arrests that the New York Police Department makes every year," and that "these [were] just allegations made by a population that is understandably unhappy"); *see also id.* (noting that "[a]cceptance of [a] 'numbers theory' would effectively eliminate the need . . . to produce hard evidence of a policy or practice" and "would eviscerate *Monell* . . . [by] allow[ing] § 1983 claims against municipalities to reach a jury . . . as long as the municipality had been sued for excessive force in some number of prior cases"); *Carson v. Lewis*, 35 F. Supp. 2d 250, 268 (E.D.N.Y. 1999) (noting "seven claims in [a] small municipality . . . , encompassing less than [30] police officers, may have statistical significance. Suffolk County, on the other hand, had in excess of 2,300 police officers . . . ."). Additionally, all of the cases Plaintiff cites, with the exception of two in which no lawsuits were filed, reached a settlement. *See Walker v. City of New York*, No. 12-CV-5902, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) ("The paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom

that is required to state a *Monell* claim."); *see also Collins*, 923 F. Supp. 2d at 479 (holding that a "litany of other police-misconduct cases" discussed in the plaintiff's complaint, "[were] insufficient to make a plausible case for *Monell* liability," some because they "involve[d] something less (settlements without admissions of liability and unproven allegations)"). Accordingly, the Court finds that the recitation of these complaints and lawsuits—not one of which resulted in a finding of liability—does not state a claim of a widespread custom pursuant to *Monell.*

### c.  Failure to Train, Supervise, & Discipline

The Court next considers whether Plaintiff has adequately pleaded a claim for relief against the City under a theory of failure to train or supervise pursuant to *Monell*.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  For municipal liability to attach on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (internal quotation marks omitted).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks omitted).  To allege deliberate indifference in the context of failure to train claim, a plaintiff must plead facts giving rise to a plausible inference (1) "that a policymaker knows to a moral certainty that h[is] employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the

city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992).

Plaintiff alleges that "many of the [Newburgh Police Department's] officers are insufficiently trained on the proper way to . . . use force" and the City "carelessly[] and recklessly trained[,] . . . supervised, controlled, managed, maintained and inspected the activities of the individual [D]efendants." (FAC ¶¶ 23, 26–27.) Plaintiff avers that the City "is further aware that such improper training has often resulted in a deprivation of civil rights." (*Id.* ¶ 24; *see also id.* ¶ 53 ("The City of Newburgh failed to properly train, retrain, supervise, discipline, and monitor the officers and improperly retained and utilized them.").) However, Plaintiff "does not allege any specific deficiency in [the City's] police officer training regimen that caused [his] injuries, a fatal gap." *Doe ex rel. Boyd v. Smereczynsky*, No. 16-CV-394, 2017 WL 1100426, at *4 (D. Conn. Mar. 23, 2017). "'While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim.'" *Corbett v. City of New York*, No. 15-CV-9214, 2016 WL 7429447, at *4 (S.D.N.Y. Dec. 22, 2016) (quoting *Smith v. Collins*, No. 15-CV-216, 2016 WL 817473, at *2 (S.D.N.Y. Feb. 26, 2016) (alteration omitted)); *see also Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440–41 (2d Cir. 2009) (holding, in deciding a motion for summary judgment, that "[t]he plaintiff must offer evidence to support the conclusion that the training program was inadequate, not '[t]hat a particular officer may be unsatisfactorily trained' or that 'an otherwise sound program has occasionally been negligently administered,' and that a 'hypothetically well-trained officer' would have avoided the constitutional violation") (quoting *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989)); *Walker v. City of New York*, No. 14-CV-808, 2015 WL 4254026, at *11 (S.D.N.Y. July 14,

2015) ("[The] [p]laintiff neither cites to procedural manuals and training guides, nor highlights the pertinent aspects of police training in order to prove the claim."); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (dismissing a *Monell* failure to train claim where the plaintiff "merely alleged that the [t]own fail[ed] to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train"); *Khanukayev v. City of New York*, No. 09-CV-6175, 2012 WL 3538729, at *4 (S.D.N.Y. Aug. 13, 2012) (dismissing a failure to train claim where "the complaint [does not] . . . allege . . . the manner in which there was a failure to train"); *Marte v. N.Y.C. Police Dep't*, No. 10-CV-3706, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010) ("While [the] plaintiffs allege that the [defendants] are responsible for training and supervision of its officers, they have not pleaded any facts that plausibly allege a specific deficiency in the training or supervision program that accounts for deprivation of their constitutional rights.").  Absent such allegations, Plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, [and] the[] complaint must be dismissed." *Twombly*, 550 U.S. at 570.  Plaintiff's failure to train claim is therefore dismissed.

Further, "Plaintiff fails to identify any specific facts to support his assertion that the [City] has failed to take any corrective or remedial actions."  *Stratakos v. Nassau County*, No. 15-CV-7244, 2016 WL 6902143, at *5 (E.D.N.Y. Nov. 23, 2016).

> There are two ways to plausibly plead deliberate indifference with respect to failure to supervise/discipline.  First, a plaintiff may plead (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that the municipality *consistently failed to investigate* those allegations.  Second, a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality *consistently failed to discipline* those involved.

*Tieman*, 2015 WL 1379652, at *21.

As to the purported lack of investigation into wrongdoing, here, Plaintiff alleges that the City "failed to adequately investigate prior complaints filed against *the individual defendant officers.*" (FAC ¶ 54 (emphasis added).) Plaintiff only identifies two Defendants that have been party to other lawsuits or cited in a complaint. (*See id.* ¶¶ 51(j)–(k), (t) (citing incidents involving Defendants Lahar and Pedrick).)[5] This does not equate to a "*consistent[] fail[ure]*" by the City to investigate those allegations. *Tieman*, 2015 WL 1379652, at *21.

Regarding the failure to discipline officers, Plaintiff alleges that "[d]espite such notice [that many Newburgh Police Department officers are insufficiently trained], the City of Newburgh has failed to take corrective action." (FAC ¶ 24; *see also id.* ¶ 52 ("[T]he City of Newburgh exercised deliberate indifference by failing to take remedial action [*in reference to the examples listed in* ¶¶ 51(a)–(u)].").) While Plaintiff collects numerous lawsuits filed and complaints raised against the City of Newburgh Police Department, as noted above, not one of the examples cited resulted in a finding of liability. Moreover, although "[i]t is true that a consistent failure to discipline can give rise to a finding that a municipality has a policy of not disciplining," "[n]o court . . . has ever held that a municipality is required to discipline every officer upon a finding of wrongdoing." *Posr v. City of New York*, 835 F. Supp. 120, 125 (S.D.N.Y. 1993) (citations omitted), *aff'd*, 22 F.3d 1091 (2d Cir. 1994). Indeed, this is true even where a jury found officers liable for using excessive force. *See id.* Without a finding of fault, "[t]here is no basis for the Court to conclude that Plaintiff plausibly alleged that the past conduct was *actually* unconstitutional, and therefore it would not be deliberately indifferent of the City to fail to punish police officers for conduct that was not improper or that they did not commit."

---

[5] Paragraph 51(c) mentions an officer *William* Lahar, who is not named as a defendant in this Action. (*See* FAC ¶ 51(c).)

*Tieman*, 2015 WL 1379652, at *21. Plaintiff's conclusory allegation that "the City Council and City Manager have failed and refused to punish or attempt to punish police officers who have engaged in conduct abusive of citizens' rights," (FAC ¶ 55), does not contain sufficient facts to allow the Court to draw the inference that there is a history of consistently failing to discipline officers. "[I]n the absence of any specific factual support, this contention is insufficient to pass muster under Rule 12(b)(6)." *Stratakos*, 2016 WL 6902143, at *4. Accordingly, the City's Motion To Dismiss Plaintiff's *Monell* claim against the City is granted.

### 2. Conspiracy

Defendants argue that the intracorporate conspiracy doctrine applies here to bar Plaintiff's conspiracy claim. (*See* Defs.' Mem. 6–8.) Under this doctrine, a plaintiff fails to state a conspiracy claim "if the conspiratorial conduct challenged is essentially a single act by a single corporation [or municipal entity] acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 465 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (affirming the dismissal of a conspiracy claim where defendants were all employees of the town police department); *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008) ("The intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other.").

An exception to the doctrine exists where a plaintiff alleges facts that tend to show the defendants were "pursuing personal interests wholly separate and apart from the entity." *Hartline v. Gallo*, No. 03-CV-1974, 2006 WL 2850609, at *9 (E.D.N.Y. Sept. 30, 2006) (internal quotation marks omitted), *rev'd on other grounds*, 546 F.3d 95 (2d Cir. 2008); *see*

*Alvarez v. City of New York*, No. 11-CV-5464, 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012) ("[C]ourts have recognized an exception to this doctrine when the defendants were motivated by an independent personal stake in achieving the corporation's objective." (alteration and internal quotation marks omitted)); *Chance v. Reed*, 538 F. Supp. 2d 500, 509 (D. Conn. 2008) (declining to apply the intracorporate conspiracy doctrine "when the individual defendants [were] alleged to have been motivated by an independent personal stake in achieving the organization's objective" (alteration and internal quotation marks omitted)). For the exception to apply, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 72 (2d Cir. 1976) (alteration and internal quotation marks omitted). Rather, "[t]he plaintiff must also allege that they acted other than in the normal course of their corporate duties." *Id.* (internal quotation marks omitted).

Here, Defendants contend that "the only factual allegation remotely suggesting a conspiracy is that false reports were written after the arrest was made," and that "report writing is very much a core function of a police officer performed while on duty in furtherance of job responsibilities." (Defs.' Mem. 7.)[6] While report writing may be a core function of an officer's duties, writing *false* reports—which is what Plaintiff here alleges—most certainly is not. (*See* FAC ¶ 20 ("Pursuant to a conspiracy, to cover up their misconduct, . . . [D]efendants[] intentionally, knowingly and purposefully *provided false statements and prepared false reports* stating that [P]laintiff resisted arrest." (emphasis added)); *id.* ¶ 46 ("[I]n order to cover up their misconduct, the officers conspired to *prepare false reports and documents*, stating that [P]laintiff

---

[6] The Court notes that the FAC does more than "remotely suggest[] a conspiracy . . . that false reports were written," (Defs.' Mem. 7), but rather explicitly alleges as much, (*see* FAC ¶¶ 20, 46).

resisted arrest." (emphasis added)).)  Plaintiff also has alleged a plausible personal motive for the alleged falsifying of reports: "to cover up [Defendants'] misconduct."  (*Id.* ¶¶ 20, 46.)  Assuming the facts as true, these allegations are sufficient to meet the personal-stake exception.  *See Hill v. City of New York*, No. 03-CV-1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) ("Here, [the] plaintiff clearly alleges that [the] defendant . . . acted in his own personal interest, not in the interest of the police department or the city, by conspiring with others to cover-up his alleged use of excessive force.  Given that [the] plaintiff has alleged that [the defendant] conspired based on a personal stake, the intracorporate conspiracy doctrine is inapplicable to the instant case."); *Alvarez*, 2012 WL 6212612, at *3 (finding the intracorporate conspiracy doctrine did not apply where the "personal stake [was] alleged adequately because the complaint states that the defendants conspired falsely to accuse plaintiff of attempted murder 'to shield themselves from liability, embarrassment, and charges of misconduct'").  Defendants' Motion To Dismiss Plaintiff's conspiracy claim is therefore denied.

### 3.  Failure to Intervene

Defendants also seek to dismiss Plaintiff's failure to intervene cause of action on the ground that it fails to state a claim.  (*See* Defs.' Mem. 8–10.)

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."  *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988).  "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

Here, Plaintiff alleges that "[t]hose [D]efendants who did not touch . . . [P]laintiff[] witnessed these acts [by Scuadroni, Rivera, and Redrick], but failed to intervene and protect [P]laintiff from this conduct," (FAC ¶ 39), despite having "had a reasonable opportunity to prevent the violations of [P]laintiff's constitutional rights," (*id.* ¶ 42). In response, Defendants contend that while "[t]he FAC identifies Scuadroni, Pedrick and Rivera as the officers involved in the application of force," the FAC "mentions Lahar and Cruz, but does not suggest what, if any, roll [sic] they played." (Defs.' Mem. 9 (citation omitted).) Defendants further assert that the FAC "recites no facts with respect to where the stand-by officers were, how long the improper use of force lasted or why they should have perceived the force used was excessive." (*Id.*) Defendants make the same arguments with respect to the 10 John or Jane Does officers. (*See id.*)

The Court disagrees with Defendants that "[t]he FAC is bereft of facts which plausibly allege the officers who did not touch [P]laintiff had a sufficient opportunity to assess that their fellow officers' conduct was unconstitutional." (Defs.' Reply Mem. of Law in Supp. of Dismissal 2 (Dkt. No. 34).) The FAC alleges that from the time Defendants "entered the apartment and found [Plaintiff] in the closet," they "grabbed [P]laintiff," "utilized a[] . . . Ta[s]er" on him, "handcuffed [P]laintiff," "stood on [P]laintiff's legs," "kicked, hit, punched, and otherwise beat [P]laintiff," used the Taser a second time, "threatened to shock [Plaintiff]" with the Taser for a third time, and "threatened to throw [P]laintiff down the stairs." (FAC ¶¶ 9–11, 13–18 (internal quotation marks omitted).) It is implausible that these numerous actions occurred in such quick succession as to preclude an opportunity for intervention. During these events, it is plausible that there was also sufficient time for Plaintiff to "plead[] for his life." (*Id.* ¶ 17.)

Defendants' citation to *O'Neill*, 839 F.2d 9, is unavailing. In *O'Neill*, the Second Circuit held that an incident during which "three blows were struck in such rapid succession . . . was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." *Id.* at 11–12. As noted, the allegations in this case are distinguishable. Additionally, the Court notes that while the *O'Neill* court found that the stand-by officer "had no realistic opportunity to prevent" the punches sustained by the plaintiff, *id.* at 11, it held that "[w]ith respect to the subsequent dragging of [the plaintiff] across the floor, . . . the case against [the stand-by officer] [was] adequate to create an issue of fact for the jury. Having seen the victim beaten, he was alerted to the need to protect [the plaintiff] from further abuse," *id.* at 12; *see also id.* ("Though not a guarantor of [the plaintiff's] safety in the face of brutality administered by other officers, [the stand-by officer] [could] be found liable for deliberately choosing not to make a reasonable attempt to stop [his fellow officer].").

As to Defendants' contention that the FAC "says no more than Lahar and Cruz were present when others used force," (Defs.' Mem. 9), this is the very essence of Plaintiff's failure to interfere claim—that Lahar and Cruz witnessed the alleged violations and took no action. Plaintiff has pleaded with sufficient specificity the events that occurred in the stand-by officers' presence, allegations that establish that a reasonable jury could conclude that there was "sufficient time to intercede . . . or . . . prevent[] the harm being caused by another officer." *Anderson*, 17 F.3d at 557. Accordingly, the Court's denies Defendants' Motion To Dismiss Plaintiff's failure to intercede claim.[7]

---

[7] Defendants assert that while "[t]he Preliminary Statement to the FAC announces it seeks relief for violation[] of [the Fourteenth Amendment,] . . . . in the body of the FAC there is no cause of action asserting a specific violation of [the Fourteenth Amendment] nor any facts alleged that could be interpreted to support [such] a claim." (Defs.' Mem. 17–18.) Plaintiff does not respond to this argument in his opposition. (*See* Pl.'s Opp'n.) "This Court may, and

## III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted with respect to Plaintiff's *Monell* claim against the City of Newburgh and denied with respect to Plaintiff's conspiracy and failure to intervene claims. As Plaintiff has already amended his Complaint in response to the arguments raised in Defendants' letter to the Court dated August 16, 2016, (*see* Dkt. No. 7), those claims that are dismissed are dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alterations and internal quotation marks omitted)).

The Court will hold a status conference on October 26, 2017 at 2:30 P.M. The Parties should be prepared to discuss a case management plan at the conference.

---

generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). Plaintiff's Fourteenth Amendment claim is thus dismissed.

Defendants further argue that Plaintiff lacks standing to obtain injunctive relief because he does not allege the likelihood of future harm at the hands of Defendants. (*See* Defs.' Mem. 18.) To have standing to obtain injunctive relief, Plaintiff "must show a likelihood that he will be injured in the future" by the conduct he seeks to enjoin. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (alteration and internal quotation marks omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects"). Further, "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Shain*, 356 F.3d at 215 (alteration and internal quotation marks omitted)).

Here, there is nothing in Plaintiff's FAC that indicates the likelihood of a future encounter with Defendants, let alone that such an encounter will result in the allegedly unconstitutional conduct of which Plaintiff complains. Indeed, in his opposition, Plaintiff does not respond to Defendants' contention that he lacks standing to assert a claim for injunctive relief. Accordingly, Plaintiff's claim for injunctive relief is dismissed. *See Lipton*, 315 F. Supp. 2d at 446.

The Clerk of Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 26.)

SO ORDERED.

Dated:     September 27, 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE